UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald P. ROSIN, Defendant–Appellant.

No. 89–2108.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 13, 1989.*

Decided Jan. 4, 1990.

---

\* After preliminary examination of the briefs, the court notified the parties that it had tentatively

Daniel P. Bach, Asst. U.S. Atty., Office of the U.S. Atty., Madison, Wis., for plaintiff-appellee.

Steven C. Underwood, Murphy & Desmond, Madison, Wis., for defendant-appellant.

Before CUMMINGS, WOOD, Jr. and COFFEY, Circuit Judges.

PER CURIAM.

Defendant-appellant Donald P. Rosin appeals from his conviction on three counts of converting moneys belonging to an Indian tribal organization in violation of 18 U.S.C. § 1163. Rosin argues that the government did not prove he had converted "moneys" as stated in the indictment. We affirm his conviction.

The evidence presented at the bench trial below showed that Rosin, while an employee of the Lake Superior Tribe of Chippewa Indians, endorsed three checks made out to himself drawn on the Tribe's bank accounts, totalling $8,000. None of the payments were authorized by the Tribe, and Rosin made personal use of the funds. After the government presented its case, Rosin moved for acquittal. One of his arguments for acquittal was his claim that the government did not prove he had converted "moneys" as stated in the indictment when it proved he converted checks, because checks are negotiable instruments and not moneys, the latter term being limited to coins and currency. The district court denied the motion for acquittal. In ruling on Rosin's argument regarding the scope of "moneys", the district court stated:

> As to your fourth argument that the defendant has been charged with converting only monies and the government hasn't proved that the monies taken were currency or coins, I disagree with that

concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R. App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

argument as well. I think that monies is used in a generic term and that it includes money that is extracted by means of a negotiable instrument.

Tr. at 170. At the end of the trial, the court found Rosin guilty on all three counts, and sentenced him to six months imprisonment to be followed by four years probation, and ordered Rosin to pay $8,000 in restitution.

■ Rosin's argument that the government proved that he had converted checks rather than moneys is the sole issue raised on appeal. He claims the indictment's use of the term "moneys" failed to adequately inform him of the charges against him. It is true that an indictment is sufficient only if it "fairly informs the defendant of the charges against him so that he may prepare a defense...." *United States v. McCarty,* 862 F.2d 143, 145 (7th Cir.1988). Rosin characterizes his claim as an invalid constructive *amendment* to the indictment. The government, on the other hand, states that Rosin's claim is in essence a claim that there was a *variance* between the indictment and the proof offered at trial. The difference between a variance and a constructive amendment is that a variance narrows the charges contained in the indictment,[1] whereas a constructive amendment occurs where evidence presented at trial broadens the possible bases for conviction from those contained in the indictment by proving an offense not fully contained in the indictment.[2] *United States v. Kuna,* 760 F.2d 813, 818 (7th Cir.1985) (citing *United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985)). The consequences from calling this either a variance or an amendment explain why the parties characterize the case as they do. Variances are subject to harmless error analysis, whereas amendments may be held to be *per se* prejudicial. *Id.*

In this case, whether or not there was a variance, an amendment, or neither, turns on whether the term "moneys" as used in the indictment is (1) the equivalent of stating that Rosin converted a check, (2) a different but broader term for checks, making checks a subset of moneys, or (3) a different and non-overlapping term from the conversion of the checks. If the terms can be considered equivalent, there was neither a variance nor an amendment because Rosin would have been proved guilty of the offense named in the indictment, and adequately informed of the charges against him. If "moneys" is a broad definition for many things and checks are only a narrower part of that, the charges in the indictment would have been narrowed constituting a variance. If "moneys" and checks are two completely different entities, then the conviction on proof of check conversion would constitute an addition to the indictment and therefore an amendment.

■ We hold, in agreement with the district court, that the term "moneys" as used in the indictment was sufficient to refer to the check conversion, and thus that there was no variance or amendment of the indictment when the government presented evidence proving that Rosin converted checks. The indictment specifically describes the three checks which Rosin was eventually convicted of converting, including their exact amounts and dates. Further, the indictment charges that what Rosin did was "convert" moneys. The verb "convert" is more logically used in conjunction with a definition of moneys which is equivalent to checks than a definition limited to coins or currency. One cannot actually convert the kind of moneys Rosin claims the word refers to, but rather can embezzle, steal, or misapply those kinds of money. The use of the word convert in the indictment strongly implies it referred to something that could be converted into personal use rather than something, like coins

---

1. The problems with a variance are that it may deprive a defendant of preparing an adequate defense, and expose him to the risk of being prosecuted for the same offense twice. *United States v. Kuna,* 760 F.2d 813, 819 (7th Cir.1985).

2. The problems with an amendment are that it denies the defendant the opportunity to be charged by a grand jury of his peers for every offense, and may mean he was not adequately apprised of the charges against him. *United States v. Field,* 875 F.2d 130, 133 (7th Cir.1989).

and currency, which was immediately available for personal use.

Although our task here is not strictly to interpret the statute under which Rosin was sentenced, the definition of moneys under the statute is relevant because the indictment cites the statute as the basis for the charge, and the term "moneys" was clearly taken from the statute itself. Section 1163 states, in relevant part, that

> [w]hoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization ... [s]hall be fined not more than $5,000, or imprisoned not more than five years, or both....

18 U.S.C. § 1163. The legislative history of the statute, while not expressly addressing the definition of the word "moneys", does show that the purpose of the statute was to address the taking of large sums of money from Indian tribes by tribal officers. *See* 1956 U.S.Code Cong. & Admin.News 3841. This suggests that it is not traditional coins or currency with which the statute concerns itself, but rather the diversion of more intangible moneys or funds used in the course of business transactions.[3]

Although there is no case law interpreting the term moneys as used in this provision, the cases dealing with convictions under 18 U.S.C. § 1163 do not seem to draw such technical distinctions among the terms used to describe offenses under the statute, such as "funds", "moneys", and "checks". *See, e.g., United States v. Logan,* 641 F.2d 860, 861 (10th Cir.1981); *United States v. Foote,* 635 F.2d 671, 672 (8th Cir.1980). In reviewing a challenge to an indictment charging a violation of § 1163, the Tenth Circuit found the indictment was not unconstitutionally vague where it "specified the amounts alleged to have been misapplied, the dates on which the misapplications were alleged to have occurred, and the persons for whose bene-

fit the misapplications were allegedly made." *United States v. Palmer,* 766 F.2d 1441, 1445 (10th Cir.1985). In *United States v. McGrady,* 508 F.2d 13 (8th Cir. 1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975), the Eighth Circuit reviewed a conviction under § 1163 where the defendant claimed it was unconstitutional to convict him of "misapplying" funds when the indictment charged him with "embezzling" funds. The court rejected this contention, stating that defendant "was charged with violating a statute which contains language proscribing misapplication of funds. Moreover, the indictment clearly sets forth the specific acts for which he was charged." *Id.* at 17. We think the same reasoning applies here.

Since the term "check" is not specifically listed in the statute, indictments charging violations of the statute necessarily use one of the other terms; here the word "moneys" was employed. Rosin argues that "funds" was the only proper term the indictment could use from the statute to refer to check conversion. We disagree. While the term "funds" could have been used here appropriately, we do not believe there was only one correct term under the statute to describe Rosin's offense.

Finally, as the government points out in its brief, there was evidence that Rosin cashed the checks, thus turning the checks into traditional currency. Rosin's argument that the currency at that point was the bank's and not the Tribe's is without merit.

The use of the word "moneys" in Rosin's indictment sufficiently described the converted checks; Rosin thus clearly knew the charges contained in the indictment. His conviction is therefore

Affirmed.

---

**3.** We do not mean to imply that we view checks as akin to promissory notes, as Rosin encourages in his briefs. A check is much more like currency, as it is more readily exchangeable; it is thus a "conditional payment of cash." *Don E.*

*Williams v. C.I.R.,* 429 U.S. 569, 583, 97 S.Ct. 850, 858, 51 L.Ed.2d 48 (1977). Such a definition offers further support for our conclusion that checks are logically considered "moneys" in this case.