928 F.2d 407
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barry Joe SMITH, Defendant-Appellant.
 No. 90-2368.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 22, 1991*
Decided March 18, 1991.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 90-CR-19, J.P. Stadtmueller, Judge.
 E.D.Wis.
 AFFIRMED.
 Before CUDAHY, EASTERBROOK, and RIPPLE, Circuit Judges.
 
 Order
 
 1
 A jury convicted Barry Joe Smith of threatening the life of a federal judge in violation of 18 U.S.C. Sec. 115(a)(1)(B), and Smith was sentenced to a twelve-month term of imprisonment and a four-year term of supervised release. The term of supervised release was later reduced to three years. In this appeal, Smith challenges the conviction and the calculation of the sentence.
 
 
 2
 The testimony at trial, taken in the light most favorable to the prosecution, showed that at 2:20 a.m. on December 29, 1989, Arthur Roby, a Security Complaint Assistant for the Milwaukee office of the FBI, received a telephone call from Barry Joe Smith. Smith threatened to kill Judge Reynolds in the morning at the courthouse with a 16th century Jewish sword. Smith said that he was angry with Judge Reynolds for dismissing his suit, and he provided his address. Smith also indicated that he was calling to warn the FBI so that it could stop him.
 
 
 3
 Roby contacted his supervisor and then the United States Marshals and the Milwaukee Police Department. The police set up surveillance of Smith's home, and at around 5:20 in the morning investigator John Kuchenreuther of the Marshals Service met with the police outside Smith's residence. Kuchenreuther and at least one police officer knocked on the door. Smith's wife, Dorlisa Smith, answered the knock and said that he was not home. She refused to let them in without a warrant and went back upstairs. Kuchenreuther knocked again, and she returned to the door. Kuchenreuther said that if she did not let them in he would kick the door down. She again retreated upstairs for a minute or two, and upon descending she let them into the house. They found Smith on the bed with a baby and with a sword next to him. They seized the sword and arrested Smith. Smith later confessed to Kuchenreuther and an FBI agent that he had called Roby as well as the news media and told them his intention regarding Judge Reynolds.
 
 
 4
 Smith[1] contends that the evidence presented at trial was insufficient to support the jury's verdict. Section 115(a)(1)(B) makes it a crime to "threaten [ ] to assault ... or murder a United States judge ... with intent to retaliate against such ... judge ... on account of the performance of official duties...." A threat violates this law only if it is a "true threat" rather than idle talk or part of a political protect. Watts v. United States, 394 U.S. 705, 708 (1969). To establish a "true threat" the prosecution must
 
 
 5
 demonstrate that the defendant made a statement "in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted [by the recipient] ... as a serious expression of an intention to inflict bodily harm upon or take the life of the President."
 
 
 6
 United States v. Hoffman, 806 F.2d 703, 707 (7th Cir.1986), quoting Roy v. United States, 416 F.2d 874, 877 (9th Cir.1969). The government need not prove that the defendant had the intent or ability to carry out the threat. Hoffman, 806 F.2d at 707-08. Our understanding of a "true threat" requirement is equally applicable to 18 U.S.C. Sec. 115(a). Courts that have addressed the scope of Sec. 115 have analogized it to provisions such as 18 U.S.C. Sec. 871. United States v. Roberts, 915 F.2d 889, 890-91 (4th Cir.1990); United States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir.1990); United States v. Raymer, 876 F.2d 383, 391 (5th Cir.1989).
 
 
 7
 The evidence presented to the jury is sufficient to support a conclusion that Smith made a "true threat." The threat specified the time and manner; Smith gave a motive for murder; Smith's statement that the call was meant as a warning so that the FBI could attempt to prevent the murder begged for the threat to be taken seriously.
 
 
 8
 Smith's argument is that the district court should have suppressed the sword seized at his house because the discovery was a result of a warrantless entry into the house. Before the magistrate and the district court judge, the government argued that Dorlisa Smith consented to the entry, and that the threat made by Kuchenreuther to kick the door down did not render the consent involuntary. The government wisely has forgone that argument on appeal. Instead, the government asserts that the warrantless entry was justified by exigent circumstances.
 
 
 9
 The argument that circumstances were exigent is weak. Agents had Smith's house surrounded, and he posed no threat to Judge Reynolds while inside. There was plenty of time to get an arrest warrant. So we shall ask without further ado whether introduction of the sword was harmless error. It was.
 
 
 10
 Admission of the sword was harmless because of the overwhelming evidence that Smith made the threat. Smith admitted doing so. The only issue for the jury was whether it constituted a "true threat," a question to which intention or ability to carry out the threat is not relevant. Hoffman, 806 F.2d at 707-08. The admission of the sword could not affect that "true threat" determination, because the focus is on whether the circumstances surrounding the statement would lead a reasonable person to foresee that the recipient would take the threat seriously. Because the focus is on the circumstances at the time the statement is made, proof that Smith owned such a sword is irrelevant. The sword was relevant to establish the identity of the caller, but overwhelming evidence in the record independently established that identity. Admission of the sword thus could not have affected the outcome of the case.
 
 
 11
 Smith argues that the statutory language in the indictment was vague and confused the jury. The jury instructions, however, clearly instructed the jury on the need to find a "true threat" prior to conviction, and defined that term in accordance with cases. Those instructions eliminated any possibility of jury confusion. Smith asserts that he was denied the ability to subpoena Judge Reynolds, who he believes was a necessary witness for the presentation of his defense. Addressing a similar statute in United States v. McCaleb, 908 F.2d 176 (7th Cir.1990), we noted that the defendant could be convicted for threatening the life of the President even if the victim was never aware of the threat. 908 F.2d at 178-79. In McCaleb, the threat was communicated to the Secret Service. That holding is equally applicable to Sec. 115. The statute punishes threats to assault or murder a federal judge regardless of the person or agency to whom the threat is conveyed. Judge Reynolds' awareness of the threat is irrelevant.
 
 
 12
 Smith also challenges the superseding indictment filed in this case, arguing that it was not filed within 30 days after his arrest in violation of 18 U.S.C. Sec. 3161(d)(1), and that it did not include all the elements of the offense. Section 3161(d)(1) is applicable to indictments dismissed on motion of defendant. In this case, the indictment was dismissed by the government and a superseding indictment obtained. Therefore, Sec. 3161(h)(3)(B)(6) is applicable. Moreover, the superseding indictment included all the elements of the offense. An indictment is sufficient if it " 'fairly informs the defendant of the charges against him so that he may prepare a defense....' " United States v. Rosin, 892 F.2d 649, 651 (7th Cir.1990), quoting United States v. McCarty, 862 F.2d 143, 145 (7th Cir.1988). Smith has not demonstrated inability to understand the nature of the charge.
 
 
 13
 Smith next argues that the district court improperly imposed a three-level upward adjustment of his sentence based upon U.S.S.G. Sec. 3A1.2(a). That section provides:
 
 
 14
 If ... the victim was ... an officer or employee included in 18 U.S.C. Sec. 1114 [which includes federal judges] ... and the offense of conviction was motivated by such status ... increase by three levels.
 
 
 15
 According to Application Note 1, that enhancement applies when specified individuals are victims rather than when the victim is an organization, agency, or the government. Smith asserts that the enhancement is inapplicable in this case because Judge Reynolds was not a victim. According to Smith, Judge Reynolds could not have been a victim because there was no evidence of intent to carry out the threat and no evidence that "a legitimate threat" was made against Judge Reynolds' life. Smith concludes that the victims in this case were the FBI and the Milwaukee Police Department, which received word of the threat and had to respond to it.
 
 
 16
 This argument is meritless. McCaleb, 908 F.2d at 178-79, addressed the applicability of Sec. 3A1.2 to a case in which the defendant sent a letter to the Secret Service informing them that he would attempt to kill the President. We held Sec. 3A1.2 applicable, reasoning that the victim in that case was the President. Moreover, we held that Sec. 3A1.2 does not include any requirement that the victim be harmed or even be aware of the threat. 908 F.2d at 179.
 
 
 17
 Smith additionally argues that the district court erred in failing to reduce his offense level for acceptance of responsibility under U.S.S.G. Sec. 3E1.1. Whether the defendant has accepted responsibility is a question of fact for the district court to resolve. United States v. Larsen, 909 F.2d 1047, 1049 (7th Cir.1990). The factual findings of the district court in determining the sentence will not be reversed unless clearly erroneous. 909 F.2d at 1049. Our record provides ample support for the decision not to apply the reduction under Sec. 3E1.1. Smith has never acknowledged that his statements regarding Judge Reynolds constituted a threat to the judge's life, or even that the statements were of such a nature that it would be reasonable for the recipient to so view them. Thus Smith has not accepted responsibility.
 
 
 18
 Finally, Smith presents a number of other issues regarding access to law books, medical care, and the ineffective assistance rendered by stand-by counsel. These claims involve evidence outside the record. To the extent they implicate diminished ability to defend against the charge, they must be presented under 28 U.S.C. Sec. 2255 rather than on direct appeal. The "ineffective assistance" claim, however, fails no matter what the evidence shows. One who elects to represent himself at trial, as Smith did, may not contend that he received ineffective assistance of counsel. Faretta v. California, 422 U.S. 806, 834 n. 46 (1975); Hance v. Zant, 696 F.2d 940 (11th Cir.1983).
 
 
 19
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a), Circuit Rule 34(f). No such statement has been filed, so the appeal is submitted for decision on the briefs and record
 
 
 [1]
 This court has allowed Smith to file a pro se brief and reply brief supplementing his lawyer's briefs. We attribute arguments raised in any of those briefs to Smith